IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MARGARETTE J. HOOD                                                                          PLAINTIFF

       v.                              Civil No. 11-5185

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                              DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS

Plaintiff, Nicole Hart-Murchison, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background:**

Plaintiff protectively filed for disability insurance benefits (DIB) and supplemental security income (SSI) under Title II and Title XVI of the Act on September 26, 2006, alleging disability due to a knee injury since February 13, 2006. Tr. 79-81, 84-86, 128, 131-137, 160-162, 170. The Commissioner denied Plaintiff's applications initially and on reconsideration. Tr. 45-50, 53-56. An ALJ held a de novo hearing, and on July 25, 2008, rendered a decision finding Plaintiff not disabled because she could perform her past relevant work as a convenience store cashier. Tr. 10-15, 18-40, 383-388, 416-438. Following denial of review by the Appeals Council, the case was appealed to this Court. Tr. 1-3, 389-391. On January 13, 2010, the matter was remanded back the Commissioner with directions further develop the record with regard to Plaintiff's RFC and to obtain a consultative mental evaluation. Tr. 392-409, 412. A second hearing was held on October 27, 2010, before a different ALJ. Tr. 327-379. Plaintiff was present and represented by counsel.

AO72A
(Rev. 8/82)

At the time of the second hearing, Plaintiff was 37 years old and possessed an eighth grade education. Tr. 332. In spite of numerous attempts, Plaintiff was not able to obtain her GED. Tr .332, 348. She had past relevant work ("PRW") experience as a retail cashier/stocker, dining room attendant, outside delivery driver, and janitor. Tr. 111-123, 129-130, 146-153, 320, 333-345.

On May 17, 2011, the ALJ found Plaintiff's obesity, chronic left knee pain status post left knee arthroscopy for a torn meniscus and popliteal cyst, left ankle fracture status post open reduction and internal fixation, chronic low back pain, generalized anxiety disorder, depressive disorder not otherwise specified, and alcohol dependency to be severe, but concluded they did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. Tr. 313-315. After partially discrediting Plaintiff's subjective complaints, the ALJ determined that she retained the residual functional capacity ("RFC") to perform sedentary work requiring only occasional climbing, balancing, stooping, kneeling, crouching, crawling, and operating foot controls. Tr. 315-320. From a mental standpoint, he also concluded that she could perform work where the interpersonal contact is incidental to the work performed, the tasks are learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. With the assistance of a vocational expert, the ALJ found Plaintiff could perform work as a worker/assembler, bench final assembler-optical, bench hand, and machine tenderer. Tr. 17-18.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on June 17, 2010. Tr. 1-4. Subsequently, plaintiff filed this action. ECF No. 1. Both parties have filed appeal briefs, and the case is now ready for decision.  ECF Nos. 17, 19.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it

adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply their impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider

AO72A
(Rev. 8/82)

the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

On appeal, Plaintiff raises three points of error. She contends that the ALJ's decision is not supported by substantial evidence because : 1) the ALJ ignored Dr. Honghiran's findings that suggest she was unable to perform sedentary work due to knee, ankle, and back pain; 2) the ALJ determined she was not credible without giving specific reasons for his determination; and, 3) the ALJ failed to properly consider her financial hardship.

#### A. Residual Functional Capacity:

In Plaintiff's first point of error, she takes issue with the ALJ's RFC determination. Specifically, she contests the ALJ's failure to adopt Dr. Honghiran conclusion that she could sit for a total of four hours during an eight-hour work day. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009)*; see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (ALJ is responsible for determining RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own description of his limitations). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the

claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003); *see also Jones*, 619 F.3d at 971 (RFC finding must be supported by some medical evidence).

While we agree that the ALJ failed to adopt Dr. Honghiran's assessment it its entirety, we can find no error is his actions. Dr. Honghiran's examination simply does not support the sitting limitations he imposed. He noted a full range of motion with no severe pain, normal reflex, normal sensation in her lumbar spine; negative straight leg raise tests in both legs; a full range of motion in her left knee with good, stable ligaments and normal circulation and sensation; and a full range of motion in her left ankle with no pain and well healed incisions. Tr. 558-567. Further, x-rays of her lumbar spine were normal, and x-rays of her ankle showed complete healing of the fracture with good alignment. In fact, Dr. Honghiran diagnosed Plaintiff with possible arthritis of the left knee and lumbosacral spine strain, but stated that he could find no definitive evidence of arthritis. And, he indicated that Plaintiff could continue to perform her janitorial work, requiring her to stand and walk three to four hours per day.

Dr. Honghiran's sitting limitation is also contradicted by Plaintiff's treating doctor, Dr. B. Raye Mitchell. Tr. 268. In September 2006, he assessed Plaintiff with only a two percent partial permanent knee impairment, and released her to return to work. Dr. Mitchell indicated that Plaintiff was capable of performing a job that primarily involved sitting. Tr. 268. In fact, he advised her to look for sedentary work, or to lose weight.

The evidence does reveal that Plaintiff complained of and was treated for back pain during the relevant time period. However, it also indicates that this pain was amendable to treatment via over-the-counter pain medications such as Ibuprofen. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability). Exams conducted in 2009 and 2010 revealed no range of motion limitations or tenderness in the back or knee. Further, the fact that she continued to work part-time as a janitor calls into question

5

the severity of her alleged pain. Tr. 333. Accordingly, we can find no objective basis for Dr. Honghiran's sitting restriction.

We also fail to find any evidence to support Plaintiff's contention that chronic pain has resulted in brain atrophy. As Plaintiff points out in her brief, any such atrophy would be evident on an MRI or a CT scan, neither of which is contained in the record. *Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). Therefore, we find that substantial evidence supports the ALJ's determination that Plaintiff could perform a limited range of sedentary work.

### B. Credibility:

Plaintiff's second argument concerns the ALJ's credibility evaluation. She contends that he did not conduct a proper *Polaski* analysis. The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the Plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, he need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that Plaintiff's

6

complaints were not fully credible. Perhaps the most damaging to her credibility is the fact that Plaintiff continued to work, albeit part-time, throughout the relevant time period. At the second administrative hearing, she was working 13 hours per week. Tr .333. *See Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) (part-time work may demonstrate ability to perform substantial gainful employment). Clearly, this work required her to stand, walk, stoop, bend, lift, reach, push, and pull. And, regardless of whether this work is classified as heavy, medium, or light work, it requires her to perform more postural activities than are allowed by the RFC imposed by the ALJ.

The lack of objective evidence to support Plaintiff's alleged limitations causes further concern. Her treating physician released her to return to sedentary work following her knee surgery and recovery, and x-rays of her lumbar spine and ankle performed in 2010 showed no abnormalities. Further, Dr. Honghiran's physical exam revealed no range of motion limitations in any of the affected areas. *See Forte*, 377 F.3d at 895. And, it appears that he diagnosed her with arthritis simply because he could find no other plausible cause for her alleged pain. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis).

The absence of a consistent pattern of treatment for her alleged pain is also problematic. As pointed out by the ALJ, there are gaps in her medical treatment. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). Further, it appears that Plaintiff voiced no complaints of back or knee pain when she was being treated for her fractured ankle in 2010 and no deficits were noted, although she alleges both to be ongoing disabling impairments. Tr. 519-540. In fact, she even denied back pain when examined on February 14, 2010.[1] Tr. 535. And, her use of over-

---

[1] At this time, the hospital staff noted that Plaintiff was able to ambulate independently and could perform all activities of daily living without assistance. Tr. 540.

7

the-counter pain medication and alcohol to treat her pain also calls into question the severity of her pain. *See Stout*, 988 F.2d at 855. Therefore, the record as a whole does not support her contention of disabling pain.

There is also a mental component to Plaintiff's case. However, we note that she was dismissed from treatment at Ozark Counseling Services in October 2007 for failing to follow through with treatment after her alleged suicide attempt in September 2006. Tr. 212-215, 292-294. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."). It is also interesting to note that on September 6, 2006, Dr. Sarah Roberts indicated that Plaintiff's Acetaminophen level was within normal limits, although Plaintiff claimed to have taken an overdose of Tylenol # 3. Tr. 215. There is no further mental health evidence, until Plaintiff was evaluated by Dr. Vann Smith in April 2008. Tr. 296-299. And, while we note Dr. Smith's diagnoses of diffuse organic brain dysfunction and cognitive dysfunction, we also note ta total lack of objective medical evidence to support these diagnoses. *See Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (ALJ may elect in certain circumstances not to give controlling weight to treating physician's opinion, as record must be evaluated as whole; for treating physician's opinion to have controlling weight, it must be supported by medically acceptable diagnostic techniques and not be inconsistent with other substantial evidence in case record). Aside from Plaintiff's own statements, there is no objective evidence to indicate that she suffered from a traumatic brain injury.[2] And, it appears that Dr. Smith relied heavily on her subjective complaints in rendering his opinion. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (opinion of consulting physician is not entitled to special deference, especially when it is based largely on claimant's subjective complaints).

---

[2] Plaintiff was in an automobile accident in January 2006, but there is no indication that she sustained a head injury or a change in mental status following the accident. Tr. 243-244.

AO72A (Rev. 8/82)

No further mental evaluations were conducted until after this court's remand order, when Plaintiff was sent for a consultative mental evaluation with Dr. Ronald McInroe. Tr. 509-514. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). He diagnosed her with alcohol dependency, amphetamine dependency (in remission, according to Plaintiff), generalized anxiety disorder with agoraphobia, depressive disorder not otherwise specified, sexual abuse of a child victim, and rule out psychotic disorder. Dr. McInroe assessed her with a global assessment of functioning ('GAF") score of 54[3], and concluded that she maintained the capacity to interact in a socially adequate manner, communicate in an intelligent and effective manner, cope with the typical mental cognitive demands of basic work related tasks, attend and sustain concentration on basic work related tasks, sustain persistence in completing tasks, sustain persistence in completing tasks, and complete basic work-related tasks within an acceptable manner. Further, he indicated that she was able to cook, buy her own groceries, and care for her two children. Tr. 513. These abilities are supported by Plaintiff's own admissions that she could care for personal hygiene, prepare simple meals, do a little house cleaning, go outside twice daily, ride in a car, shop in stores, pay bills, count change, handle a savings account, use a checkbook/money orders, work, talk to her mother on the phone twice per week, and work part-time. Tr. 138-145, 333. And, they are mirrored in the ALJ's RFC assessment. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store inconsistent with disability); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church inconsistent with disability); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive inconsistent

---

[3] A GAF of 54 is indicated of moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* Diagnostic and Statistical Manual of Mental Disorders IV-TR 32 (4th ed. 2000).

with disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor inconsistent with disability).

Dr. McInroe also took issue with Dr. Smith's assessment, as he was unable to come to the same conclusions based on the same evidence. He was also of the opinion that Dr. Smith's diagnoses were based primarily on Plaintiff's subjective complaints.

Therefore, although the ALJ did not methodically discuss each *Polaski* factor, we find his discussion of the inconsistencies and inadequacies in the medical evidence coupled with his recitation of Plaintiff's testimony and other admissions to constitute a sufficient credibility analysis. Remanding the case merely for him to recite *Polaski* and more clearly lay out his reasons for his credibility determination would serve no purpose, as the end result would be the same. Accordingly, we find substantial evidence to support the ALJ's determination that Plaintiff's subjective complaints were not entirely credible.

### C.    Financial Hardship:

Plaintiff's final argument centers around the ALJ's alleged failure to consider her financial hardship. She contends that her failure to obtain consistent medical treatment and medication is excused due to her lack of insurance and financial inability to pay for treatment. Economic justifications for lack of treatment can be relevant to a disability determination. *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992). However, in this case, the record is void of any evidence to show that Plaintiff was ever denied medical treatment. We do note that her ankle surgery was delayed two weeks, due to her purported inability to come up with a down payment. But, there is no evidence to show that Plaintiff ever even attempted to avail herself of the low cost and/or indigent medical services offered by clinics in her area. *Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir. 1992) ( lack of evidence that the claimant attempted to find any low cost or no cost medical treatment for her alleged pain and disability is

inconsistent with a claim of disabling pain). As such, we can not say that her financial status excuses her failure to seek out consistent treatment.

In addition, we note that Plaintiff admitted to consuming a fifth of whiskey three times per week. Tr. 363-364, 509-514. We find it interesting that she was able to obtain this amount of alcohol on a weekly basis, but could not afford treatment or medication.

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus recommends that the decision be affirmed, and Plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of February 2013.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**